UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LISA L.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. C19-5341-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff Lisa L. seeks review of the denial of her application for Disability Insurance Benefits. She contends the ALJ erroneously failed to (1) find her PTSD and panic disorder were severe impairments, (2) acknowledge limitations caused by chronic pain, (3) resolve a conflict between the Dictionary of Occupational Titles and the residual functional capacity finding, (4) include visual limitations in the RFC finding, and (5) include all plaintiff's limitations in the hypothetical posed to the vocational expert. Dkt. 12. The Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

Plaintiff is currently 57 years old and was 53 years old on her date last insured, has an 11th grade education, and has worked as a gambling cashier and a money counter. Tr. 311, 164,

175-76. She applied for benefits in January 2016, alleging disability as of June 17, 2014, the day after a previous decision denying her benefits became final. Tr. 155, 311. After her applications were denied initially and on reconsideration, the ALJ conducted a hearing and, on June 22, 2018, issued a decision finding plaintiff not disabled. Tr. 11-22. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.

**THE ALJ'S DECISION**

Utilizing the five-step disability evaluation process,[1] the ALJ found that through her date last insured of December 31, 2014, plaintiff had not engaged in substantial gainful activity; she had the following severe impairments: degenerative joint disease and degenerative disc disease; and these impairments did not meet or equal the requirements of a listed impairment.[2] Tr. 13-14. The ALJ found that plaintiff had the residual functional capacity to perform light work except she could occasionally kneel, crouch, and crawl, with no climbing of ladders, ramps, and scaffolds, and she was limited to occasional overhead reaching. Tr. 15. The ALJ found that plaintiff was capable of performing her past relevant work as a gambling cashier and money counter and that she was therefore not disabled. Tr. 21-22.

**DISCUSSION**

**A.    Step two: PTSD and panic disorder**

Plaintiff argues that the ALJ erred in finding that her PTSD and panic disorder were not severe at step two. Dkt. 12 at 4. At step two, a claimant must make a threshold showing that (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146

---

[1] 20 C.F.R. § 404.1520.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

(1987); 20 C.F.R. § 404.1520(c), 416.920(c). A medically determinable impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The step-two inquiry has been characterized as "a *de minimis* screening device to dispose of groundless claims." *Id.*

When evaluating whether a mental impairment is severe, the ALJ must rate the degree of functional limitation resulting from the impairment in four broad areas: the ability to (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c). If the ALJ rates the degree of functional limitation in these areas as "none" or "mild," the ALJ will generally find the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1520a(d).

The ALJ found that plaintiff's medically determinable mental impairment of anxiety did not cause more than minimal limitation in plaintiff's ability to work and was therefore not severe. Tr. 14. In the broad areas of functioning, the ALJ found that plaintiff's anxiety caused no limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; or in adapting or managing oneself; and mild limitation in interacting with others. *Id.*

As support for this finding, the ALJ found that plaintiff's anxiety and panic attacks were treated with psychiatric medicine from her primary care physician during the relevant period, and that mental status examination findings during this time included cooperative behavior, normal mood and affect, and intact attention and concentration. Tr. 14. The ALJ cited to one treatment

note from Donald Novey, M.D., dated July 31, 2014, which documented plaintiff's medication usage and included the mental status examination findings the ALJ described. Tr. 413-18.

The ALJ also discussed, but did not assign weight to, a July 24, 2014, psychosocial mental status assessment by Jill Stenerson, MA, LMHC. Tr. 14. In that assessment, plaintiff reported increasing anxiety and panic, a history of domestic violence, and current symptoms of nightmares, flashbacks, hypervigilance, and difficulties with concentration. Tr. 406. On mental status examination, plaintiff was amiable and cooperative; she had good recall of past events even though she spoke with "dissociation" when discussing traumatic memories; and she was alert and fully oriented. Tr. 409. However, she appeared to have some deficits in executive functioning, including memory, metacognition, sustained attention, and self-regulation of affect, as well as impaired insight and judgment. *Id.* Ms. Stenerson diagnosed PTSD and panic disorder. Tr. 410. She opined that plaintiff was suffering the effects of chronic, consistent trauma from years of abuse and she would no longer be able to work. *Id.*

Plaintiff argues that the ALJ erred by relying on Dr. Novey's treatment note, which was made as part of a general physical examination, but not Ms. Stenerson's more focused mental examination from the same period. Dkt. 12 at 7. The court agrees. Although the ALJ noted Ms. Stenerson's findings of deficits in memory, cognition, sustaining attention, self-regulation, judgment, and insight, the ALJ nevertheless found that plaintiff had no limitations in understanding, remembering, and applying information; concentrating, persisting, and maintaining pace; or adapting and managing herself. The ALJ's findings are in direct conflict with this evidence, and the ALJ gave no explanation for this conflict or reasons for discounting Ms. Stenerson's opinion as part of the step to *de minimis* screening test.

Ms. Stenerson's examination findings are sufficient to establish that plaintiff's mental impairments pass the de minims screening test of step two. Plaintiff's claims of mental limitations are not groundless but are instead supported by Ms. Stenerson's detailed mental examination which established limitations that were more than a slight abnormality that would have no impact on plaintiff's ability to work. The ALJ erred in finding that plaintiff's mental impairments were not severe.

The Commissioner argues that any error at step two is harmless because step two is not meant to identify the impairments the ALJ considers when evaluating the claimant's residual functional capacity, and because whenever the ALJ decides step two in the claimant's favor (i.e., finds any impairment to be severe and proceeds with the remainder of the disability evaluation process), the claimant "could not possibly have been prejudiced." Dkt. 13 at 3.

The Commissioner's arguments fail. Although the ALJ could have possibly cured the error by considering the effects of plaintiff's mental impairments throughout the remainder of the disability evaluation process, the ALJ did not. First, the ALJ's erroneous finding that plaintiff had no limitations in three of the four broad functional areas (and only mild limitations in the fourth) demonstrates that even if the ALJ did consider these functional areas at the later steps, he would have found no limitations based on them.

Second, rather than considering the effects of plaintiff's mental impairments in evaluating plaintiff's RFC, instead the ALJ noted that the state agency consultants had found that plaintiff's mental impairments were severe but there was insufficient evidence to evaluate the four broad functional areas. Tr. 21 (citing Tr. 212, 227). Instead of considering the evidence of plaintiff's functioning in the four broad areas, the ALJ merely gave these opinions great weight. Tr. 21. And though the ALJ discussed Ms. Stenerson's evaluation, finding that it was the only mental

health evaluation during the relevant period, the ALJ found that records from plaintiff's primary care doctor and plaintiff's reported activities did not support a finding that plaintiff's impairments were severe, and gave Ms. Stenerson's opinion little weight. *Id.* The ALJ thus failed to consider the effects of plaintiff's mental impairments on her RFC and did not include any mental limitations in the RFC finding.

Although the ALJ proceeded with the disability evaluation process after finding plaintiff's mental impairments were not severe, the ALJ's failure to consider the effects of plaintiff's medically determinable impairments was prejudicial to plaintiff. Accordingly, the court finds that this error was harmful and requires remand for further administrative proceedings.

Plaintiff asserts several other errors in the ALJ's decision. Because the ALJ's error at step two requires remand for proper consideration of the severity of plaintiff's mental impairments, and because the outcome of this reevaluation will affect each of the remaining steps of the disability evaluation process, the court need not evaluate all the remaining issues plaintiff raises. However, the court will briefly address them as needed to ensure appropriate consideration of this case on remand.

**B.     Chronic pain**

Plaintiff argues that the ALJ erred failed to acknowledge any limitations caused by chronic pain. Dkt. 12 at 8. She points to the fact that chronic pain was Dr. Novey's primary diagnosis and it was consistently included as the primary diagnosis in treatment notes from the relevant period. *Id.* She also points to a treatment note from February 2016, 40 days after her date last insured, that listed limitations caused by chronic pain, including difficulty with repetitive motions, headaches, numbness, and stiffness in legs, shoulder, back and wrists. Tr.

466. She asserts that while the ALJ found there was no change in her condition from the date of the previous decision through her date last insured, the ALJ failed to account for ongoing positive trigger points, the consistent primary diagnosis of chronic pain, and Ms. Stenerson's mental assessment diagnosing PTSD and panic disorder. Dkt. 12 at 8.

The Commissioner responds that the ALJ considered plaintiff's complaints of chronic pain but found her subjective symptom allegations were not fully reliable and gave multiple reasons to discount them, and that the ALJ accounted for plaintiff's physical impairments by including physical limitations in the RFC finding. Dkt. 13 at 3-4.

Because the court is remanding this case to correct an error at step two, the ALJ will necessarily have to redo the remainder of the disability evaluation process, including a reevaluation of the medical evidence and plaintiff's subjective symptoms testimony. The court cannot direct the ALJ to evaluate the evidence of plaintiff's chronic pain and its effect on plaintiff's functioning in any particular way. However, the ALJ should take to evaluate all the medical evidence to assess the impact of pain and other symptoms on plaintiff's functioning, along with the impact of plaintiff's medically determinable severe mental impairments.

**C.     Conflict between the DOT and the RFC**

Plaintiff argues that the ALJ failed to resolve a conflict between the Dictionary of Occupational Titles and the RFC finding. Dkt. 12 at 10. The VE testified that a person who is limited to only occasional overhead reaching could perform the jobs of gambling cashier and money counter. Tr. 176. Plaintiff asserts that this testimony conflicts with the DOT descriptions, which provide that these jobs require frequent or constant reaching without specifying limitations on reaching in particular directions, and that the ALJ failed to reconcile this testimony. Dkt. 12 at 10. The Commissioner responds that there is no apparent conflict because the DOT does not

indicate that these jobs require any overhead reaching. Dkt. 13 at 5. The court need not resolve this argument, as the ALJ will have to obtain new vocational expert testimony on remand. However, the court notes that the ALJ did not inquire of the VE if his testimony conflicted with the DOT and therefore did not explore whether there were any conflicts. Where there is a conflict, or an apparent conflict, between the VE's testimony and the DOT, the ALJ must ask the VE to reconcile the conflict before relying on the expert to decide if the claimant is disabled. *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016). The ALJ should take care to inquire of the VE about any actual or apparent conflicts in the testimony on remand.

### D. Visual limitation

Plaintiff argues that the ALJ erred by failing to include a visual limitation in the RFC finding, despite giving great weight to the medical consultant's opinion that she was limited to frequent near visual acuity. Dkt. 12 at 11. The Commissioner responds that any error in omitting this limitation is harmless because one of the two jobs identified at step four, gambling cashier, is consistent with this visual limitation. Dkt. 14 at 6. The court agrees with plaintiff that the ALJ's failure to include any visual limitation in the RFC finding was erroneous. However, as the court is remanding the case for reevaluation of the RFC, the court will simply direct the ALJ to evaluate the evidence of plaintiff's visual limitations and to include any visual limitations the ALJ deems necessary in the new RFC finding.

### E. VE testimony

Plaintiff asserts, based on the errors she claims above, that the VE's testimony does not constitute substantial evidence to support the ALJ's findings. Dkt. 12 at 11-12. The errors the court has identified above will necessitate that the ALJ formulate a new RFC finding and obtain

new VE testimony based on that finding. Accordingly, the court need not address these arguments based on the VE testimony.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reevaluate plaintiff's medically determinable severe impairments, including her medically determinable severe mental impairments. The ALJ shall also reevaluate the medical evidence and plaintiff's testimony, redo the remainder of the five-step disability evaluation process, and shall further develop the record as the ALJ deems necessary and appropriate to make a new decision.

DATED this 19th day of November, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge